**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00813-WYD-NYW

CHRISTOPHER M. RICKABY,

      Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a Connecticut corporation,

      Defendant.

---

## ORDER

Magistrate Judge Nina Y. Wang

      This civil action comes before the court on Plaintiff Christopher M. Rickaby's ("Plaintiff" or "Mr. Rickaby") Motion to Compel Discovery (the "Motion to Compel") [#47, filed Jan. 14, 2016] and the Joint Motion Regarding Restriction of Exhibits 1 and 2 to Plaintiff's Motion to Supplement the Administrative Record (the "Motion to Restrict") [#61, filed Mar. 22, 2016]. Pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, the Order Referring case dated May 13, 2015 [#10] and the memoranda dated January 14, 2016 [#48] and March 22, 2016 [#62], these motions are before this Magistrate Judge.

## BACKGROUND

      This is an ERISA case under 29 U.S.C. § 1132 involving Mr. Rickaby's request for reinstatement of his long-term disability benefits by Defendant Hartford Life and Accident Insurance Company ("Hartford" or "Defendant"). Mr. Rickaby filed this matter seeking to recover long-term disability ("LTD") benefits pursuant to a policy sponsored by his employer,

Stryker Corporation (the "Stryker Plan").  *See* [#1].  Hartford is responsible for paying all benefits under the Stryker Plan and acts as claims administrator for LTD claims under the Stryker Plan.  Mr. Rickaby became physically unable to perform the functions of his job duties and took a leave of absence to undergo ankle surgery in February 2008.  He then had a number of ankle surgeries and continues to need surgery on a chronic basis due to bilateral degenerative joint disease in his ankles and bone abnormalities, including bilateral ankle tenosynovitis, and chronic bilateral ankle pain with evidence of osteoarthritis of the ankle joints.  Mr. Rickaby began to receive LTD benefits in 2008 based on his medical condition, but these benefits were terminated in March 2014.  [#1 at 4].  Mr. Rickaby then exhausted his administrative remedies and filed the Complaint in this matter.  [#1 at 6].

In his Motion to Compel, Mr. Rickaby seeks to compel Hartford to respond to two interrogatories pertaining to instances in which Hartford has obtained medical opinions through third-party University Disability Consortium ("UDC") and used those medical opinions as the bases for denial or approval of claims for long-term disability benefits.  Mr. Rickaby argues that this discovery is relevant to show the extent of Hartford's conflict of interest, warranting a reduced level of deference to its decision to deny Mr. Rickaby's LTD.  In particular, Mr. Rickaby argues that Hartford has a long history of relying on opinions by UDC as a basis for denying disability benefits and that discovery into this relationship will help Mr. Rickaby show bias.  Hartford opposes the requested discovery.  Hartford argues that the discovery Mr. Rickaby requests, which Hartford likens to a "batting average statistic," is not appropriate in an ERISA action, as it does not fall within the narrow exception to the Tenth Circuit's "no additional discovery" rule.  [#50 at 1-2].

The Parties' Motion to Restrict seeks to restrict Exhibit 1 and a portion of Exhibit 2 to Plaintiff's Motion to Supplement the Administrative Record on the basis that these documents contain Hartford and UDC's sensitive commercial and financial information.  *See* [#61].

## ANALYSIS

### I.    Motion to Compel

"In an ERISA case where, as here, the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we review the administrator's decision for an abuse of discretion."  *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010) (internal quotations and citations omitted).  Under this abuse of discretion standard, the relevant case law generally "prohibits courts from considering materials outside the administrative record where the extra-record materials sought to be introduced relate to a claimant's eligibility for benefits."  *Id.* at 1162 (citing *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992).  Nevertheless, "[o]ur cases and the Supreme Court's decision in [*Metropolitan Life Ins. Co. v.*] *Glenn*, [544 U.S. 105 (2008)], . . . contemplate that this general restriction does not conclusively prohibit a district court from considering extra-record materials related to an administrator's dual role conflict of interest."  *Id.* Evidence of a conflict of interest may appear on the face of the plan, by evidence of improper incentives, or through proof of a pattern or practice of unreasonably denying meritorious claims.  *Glenn*, 554 U.S. at 123 (Roberts, J., concurring).

Under Tenth Circuit precedent, the court is not to apply special rules for discovery relating to a dual role conflict of interest, but to consider the requested discovery pursuant to Fed. R. Civ. P. 26(b).  *Murphy*, 619 F.3d at 1163.  Under Fed. R. Civ. P. 26(b)(1), the scope of

discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense

and proportional to the needs of the case."  The Tenth Circuit explained the application of Rule

26(b) in ERISA discovery in *Murphy*:

> In exercising its discretion over discovery matters under Rule 26(b), district courts
> will often need to account for several factors that will militate against broad
> discovery. First, while a district court must always bear in mind that ERISA seeks
> a fair and informed resolution of claims, ERISA also seeks to ensure a speedy,
> inexpensive, and efficient resolution of those claims . . . . And while discovery
> may, at times, be necessary to allow a claimant to ascertain and argue the
> seriousness of an administrator's conflict, Rule 26(b), although broad, has never
> been a license to engage in an unwieldy, burdensome, and speculative fishing
> expedition. The party moving to supplement the record or engage in extra-record
> discovery bears the burden of showing its propriety.
>
> Second, in determining whether a discovery request is overly costly or
> burdensome in light of its benefits, the district court will need to consider the
> necessity of discovery. For example, the benefit of allowing detailed discovery
> related to the administrator's financial interest in the claim will often be
> outweighed by its burdens and costs because the inherent dual role conflict makes
> that financial interest obvious or substantive evidence supporting denial of a claim
> is so one-sided that the result would not change even giving full weight to the
> alleged conflict. Similarly, a district court may be able to evaluate the effect of a
> conflict of interest on an administrator by examining the thoroughness of the
> administrator's review, which can be evaluated based on the administrative
> record.

*Murphy*, 619 F.3d at 1162-63 (internal quotations and citations omitted).

Under Fed. R. Civ. P. 37(a), a party may file a motion to compel discovery.  Rule 37

provides:

> On notice to other parties and all affected persons, a party may move for an order
> compelling disclosure or discovery. The motion must include a certification that
> the movant has in good faith conferred or attempted to confer with the person or
> party failing to make disclosure or discovery in an effort to obtain it without court
> action.

Fed. R. Civ. P. 37(a)(1). One ground for a motion to compel a discovery response is if "a party

fails to answer an interrogatory submitted under Rule 33."  Fed. R. Civ. P. 37(a)(3)(iii).  Under

the Rule, "an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Mr. Rickaby moves to compel Hartford to provide responses to his Interrogatory Nos. 2 and 3, which pertain to the issue of bias of third-party vendors who Hartford utilizes. *See* [#47 at 2]. The relevant Interrogatories are reproduced below. The court includes Interrogatory No. 1 for the sake of clarity, although the Parties do not appear to maintain a dispute about Hartford's response to Interrogatory No. 1.

> 1. Please state the total number of instances since January 1, 2012, in which you have obtained a medical opinion through University Disability Consortium concerning a claim for long-term disability benefits.

> 2. Please state the number of instances of those instances identified in answer to Interrogatory No. 1 in which a medical opinion obtained through University Disability Consortium supported your denial of the claim for long-term disability benefits.

> 3. Please state the number of instances of those instances identified in answer to Interrogatory No. 1 in which a medical opinion obtained through University Disability Consortium supported the claimant's claim for long-term disability benefits.

Mr. Rickaby represents that Hartford responded to Interrogatory No. 1 by providing information regarding Dr. Jerome Siegel, the doctor whom Hartford used to review the medical records in Mr. Rickaby's case. [#47 at 2]. However, Hartford objected to and did not answer Interrogatory Nos. 2 and 3. [*Id.*]. Mr. Rickaby argues that the discovery sought in these Interrogatories is relevant to show the bias of third party vendors utilized by Hartford. *See* [#47 at 2]. Hartford responds that this discovery does not fall within the narrow exception to the "no additional discovery" rule in ERISA actions and that even if it did, the burden on Hartford to produce this information outweighs the benefit to Mr. Rickaby in obtaining it.

The court finds that Interrogatory Nos. 2 and 3 are not within the bounds of the narrow exception to the rule that discovery outside the administrative record is not permitted in this type of ERISA case.  The determination of whether to award or deny disability benefits is necessarily fact-intensive.  The court is therefore not convinced that discovery into the number of claims that Hartford has denied or awarded with supporting evidence from UDC or Dr. Siegel would be probative of any bias or lack thereof.  Indeed, without discovery into the underlying bases for these coverage decisions, a simple tally of the number of grants and denials would lack meaning, particularly where there is no information regarding whether the denials were wrongly decided.[1] *See Whalen v. Std. Ins. Co.*, No. SACV 08-0878 DOC, 2010 WL 346715, at *2 (C.D. Cal. Jan. 14, 2010) ("A simple mathematical proportion of decisions in which each doctor denies benefits is of no relevance unless it can also be shown that those denials were wrongly decided.") (citing *Dilley v. Metropolitan Life Ins. Co.*, 256 F.R.D. 643, 645 (N.D. Cal. 2009)).

The court also finds that the burden that the requested discovery would place on Hartford outweighs the value of this information to Mr. Rickaby.  The court makes this finding with specific consideration of the recent amendments to the Federal Rules of Civil Procedure, including the amendment to Rule 26(b)(1) that specifically states that the scope of allowable

---

[1] The Parties should not interpret this Order to stand for the proposition that this discovery would have necessarily been allowed should Mr. Rickaby have re-formulated his Interrogatories to also request information regarding the underlying facts of each of the claims for which medical opinions were obtained from UDC.  Indeed, such broad and untargeted discovery would likely not meet the proportionality requirement of Fed. R. Civ. P. 26(b) or comport with the narrow scope of discovery allowed in dual role conflict cases under Tenth Circuit and District of Colorado precedent.

discovery is defined using the principles of proportionality.[2]   The reports submitted by Dr. Seigel to Hartford do not contain conclusions as to whether an individual meets the definition of disability under an applicable policy, and whether a report is favorable or unfavorable is a subjective determination.  *See* [#50 at 14]; [#50-1 at ¶ 12].   And, as Hartford points out, many of these reports likely comment on more than one illness or malady and may, therefore, be characterized as both favorable and unfavorable, depending upon the specific medical condition at issue.  [#50 at 14]; [#50-1 at ¶ 16].  The discovery Mr. Rickaby moves to compel would thus require an individual to review each of the reports compiled by Dr. Siegel, draw a subjective conclusion about whether that report was favorable or not favorable, and then determine whether that report supported a denial of the claim.  Hartford has provided a conservative estimate that it would cost Hartford between $16,000 and $24,000 in labor charges to compile even the most basis statistical analysis requested by Mr. Rickaby.  *See* [#50 at 14]; [#50-1 at ¶¶ 17-20].  And even if the court were to compel Hartford to compile these statistics, the court finds that the information in the statistics, without any type of information as to whether the statistics are statistically sound or significant (from a technical perspective) and how the statistics should be interpreted, would be of limited value to the conflict of interest analysis presented in this case.

The court also notes that Mr. Rickaby has been provided other information about Hartford's relationship with UDC and Dr. Seigel, including the numbers of peer reviews

---

[2] Pursuant to 28 U.S.C. § 2074(a) and the Order of the Supreme Court dated April 29, 2015, the amendment governs all civil cases commenced after December 1, 2015 and "insofar as just and practicable, all proceedings then pending."  Although this case was initiated prior to December 1, 2015, this court applies the principle of proportionality because it is the same principle that would have applied through the former Rule 26(b)(2)(C)(iii).  *See* Fed. R. Civ. P. 26(b)(1) advisory committee note to 2015 amendment ("Most of what now appears in Rule 26(b)(2)(C)(iii) was first adopted in 1983.").

conducted by Dr. Siegel from 2012-2015 and the sum of all fees paid to UDC for these reviews. *See* [#42-2 at 6]. To the extent that Mr. Rickaby wishes to make an argument in his briefing to the court that Dr. Seigel's opinions are therefore biased or flawed, he may do so with that information. The court finds that the additional information sought would impose an undue burden on Hartford if Hartford were to be compelled to compile it, given the questionable relevance. On the record before it, the court finds that the requested discovery is extensive and unnecessary and would "frustrate ERISA's purpose to 'ensure a speedy, inexpensive, and efficient resolution of [the plaintiff's] claims.'" *Cleary v. Boeing Co. Employee & Welfare Ben. Plan (Plan 303)*, No. 11-cv-00403-WJM-BNB, 2012 WL 5571454, at *3 (D. Colo. Nov. 15, 2012) (quoting *Murphy*, 619 F.3d at 1163). The court will therefore deny Mr. Rickaby's Motion to Compel.

Having determined that the court will deny Mr. Rickaby's Motion to Compel, I will nonetheless briefly address why I decline to adopt several of Mr. Rickaby's remaining arguments. In arguing to compel the Interrogatory responses, Mr. Rickaby relies heavily on three cases from this District: (1) *York v. The Prudential Ins. Co. of Amer.*, No. 13-cv-03289-REB-MJW, 2014 WL 1882475 (D. Colo. May 12, 2014); (2) *Rivera v. Unum Life Ins. Co. of Amer.*, No. 11-cv-02585-WYD-KLM, 2012 WL 2709138 (D. Colo. July 9, 2012); and (3) *Almeida v. Hartford Life & Accident Ins. Co.*, No. 09-cv-01556-ZLW-KLM, 2010 WL 743520 (D. Colo. Mar. 2, 2010). Mr. Rickaby asserts that these cases show that courts in this District have permitted discovery of essentially the same materials that are at issue here. *See* [#47 at 5]. These decisions can be read to stand for the proposition that in certain circumstances, discovery into the claims denial practices may be allowed. However, a court's exercise of discretion as to

whether to compel discovery is case-specific, and this court's decision rests firmly on its determination, based on the record before it in this action, that Mr. Rickaby's articulated need for this information is outweighed by Hartford's showing of burden.

Finally, the court will briefly address Mr. Rickaby's argument that Hartford waived its ability to object to Interrogatory Nos. 2 and 3, which was raised for the first time in Mr. Rickaby's reply brief. While the "court generally does not review issues raised for the first time in a reply brief," *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1166 (10th Cir. 2003), I will briefly address this argument because Hartford had the benefit of responding to it in a surreply brief.

Mr. Rickaby appears to argue that Hartford waived its right to object to Interrogatory Nos. 2 and 3 because Hartford did not oppose Mr. Rickaby's September 30, 2015 Motion for Discovery [#28], in which Mr. Rickaby proposed four interrogatories including the two at issue here, and in its response to that motion purportedly led the court to believe that it would respond to these interrogatories. *See* [#52 at 1-2, 9]. The court respectfully disagrees. While Hartford did state in its response to Mr. Rickaby's Motion for Discovery that it would not oppose Mr. Rickaby's request for written discovery, it stated that it "expressly reserves all objections to Plaintiff's written discovery" and that "[b]oth parties reserve all rights and objections with regard to Interrogatories 1-3." [#32 at 2]. The court does not view Hartford's agreement to Mr. Rickaby's request for discovery and its express reservation of the right to object to such discovery as constituting any waiver of its arguments on the issue presently before the court.

On the basis of the foregoing, the court respectfully denies Mr. Rickaby's Motion to Compel.

## II.      Motion for Leave to Restrict

The Parties jointly filed a motion for leave to restrict two documents filed as exhibits to Plaintiff's Motion to Supplement Administrative Record.  [#61].  The Parties request that Exhibit 1 to that Motion, which includes Hartford internal policy manuals and guidelines and an Independent Medical Consultant Services Agreement between Hartford and University Disability Consortium, be maintained under a Level 1 restriction.  The Parties also request that the court substitute a redacted copy of Exhibit 2, Defendant's First Supplemental Responses to Plaintiff's Interrogatories and Requests for Production of Documents, for the copy that is currently docketed.

There is a common-law right of access to judicial records, premised on the recognition that public monitoring of the courts fosters important values such as respect for our judicial system.  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002).  Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society."  *M.M. v. Zavaras,* 939 F. Supp. 799, 801 (D. Colo. 1996).  There is a presumption that documents essential to the judicial process are to be available to the public, but access to them may be restricted when the public's right of access is outweighed by interests which favor nondisclosure.  *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).

These principles are reflected in D.C.COLO.LCivR 7.2(a).  Local Rule 7.2(c) is quite clear that a party seeking to restrict access must make a multi-part showing.  It must: (1) identify the specific document for which restriction is sought; (2) identify the interest to be protected and the reasons why that interest outweighs the presumption of public access; (3) identify a clear

injury that would result if access is not restricted; and (4) explain why alternatives to restricted access—such as redaction, summarization, stipulation, or partial restriction—are not adequate. D.C.COLO.LCivR 7.2(c)(1)-(4).

The Parties seek Level 1 Restriction of Exhibits 1 and 2 [#43; #42-2] in support of Plaintiff's Motion to Supplement the Administrative Record.  The Parties argue that Exhibit 1 consists of commercially sensitive information and proprietary contracts/internal company manuals.  [#61 at 2].  The Parties further argue that a portion of Exhibit 2 which includes Hartford's Response to Interrogatory No. 1 should be redacted because the interrogatory response reveals sensitive commercial and financial information of Hartford and third-party University Disability Consortium. *See* [#61 at 5].

In reviewing the documents at issue, the court has determined that the potential harm to Hartford and UDC if the sensitive commercial and financial information in Exhibit 1 and Hartford's Response to Interrogatory 1 is not restricted outweighs the presumption that Exhibits 1 and 2 should be made available for public inspection.  Accordingly, the court will grant the Motion to Restrict.

## CONCLUSION

On the basis of the foregoing, **IT IS HEREBY ORDERED** that:

(1)    The Motion to Compel Discovery [#47] is **DENIED**.  Each party shall bear its own costs and fees as to this Motion;

(2)    The Joint Motion Regarding Restriction of Exhibits 1 and 2 to Plaintiff's Motion to Supplement the Administrative Record [#61] is **GRANTED**;

(3)     The Clerk of the Court is **DIRECTED** to **MAINTAIN** the following documents under Level 1 Restriction: [#43; #42-2]; and

(4)     The Clerk of the Court is **DIRECTED** to **DOCKET** [#61-1] as the publicly-accessible version of Exhibit 2 (Redacted) [#42-2] to Plaintiff's Motion to Supplement the Administrative Record.

DATED: April 21, 2016                                   BY THE COURT:

                                                        /s/ Nina Y. Wang_____
                                                        United States Magistrate Judge